SCOTT C. HALL (State Bar No. 232492)
PHILLIP J. WIESE (State Bar No. 291842)
LEEZA ARBATMAN (State Bar No. 347753)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
E-Mail: ef-sch@cpdb.com
          ef-pwiese@cpdb.com
          ef-ela@cpdb.com

Attorneys for Plaintiff
Lofty Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| LOFTY INC., | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| VIVEK SHAH, | **DEMAND FOR JURY TRIAL** |
| Defendant. | Trial Date:     None Set |

## NATURE OF THE ACTION

1.     Plaintiff Lofty Inc. ("Lofty") brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, seeking a declaration that the operation of Lofty's commercial website platform, including its use of standard, widely deployed website analytics tools, does not violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 638.51, and that Defendant Vivek Shah lacks statutory standing to assert his threatened claims.

2.     Defendant Vivek Shah is a serial pro se litigant who has, in the span of several months, sent hundreds or possibly thousands of templated demand letters to businesses across the United States alleging that the use of analytics tools like

Google Analytics and HubSpot on commercial websites constitutes the unlawful installation and use of a "pen register" under CIPA. On June 13, 2026, Mr. Shah sent such a letter to Lofty, demanding payment and attaching a draft complaint (the "Threatened Complaint") ominously characterized as "ready to be filed" should Lofty fail to pay thousands of dollars.

3.    An actual controversy of sufficient immediacy and concreteness exists between the parties. Lofty does not believe it has violated CIPA and does not intend to settle. Lofty now seeks a judicial declaration of its rights so that it, its employees, and its more than 91,000 customers using the Lofty platform and who use and rely on some of the same analytics tools, may have certainty as to the legality of their conduct and peace of mind that they will not be subjected to ongoing threats to their businesses.

## PARTIES

4.    Plaintiff Lofty Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Phoenix, Arizona. Lofty is a real estate technology company that provides website-building software, CRM tools, and AI-powered marketing platforms to real estate agents and brokerages throughout the United States. Lofty operates the lofty.com platform that powers over 30,000 websites for more than 91,000 real estate professionals across the country.

5.    Defendant Vivek Shah is an individual who, upon information and belief, maintains an address at 1301 N Broadway Ste 32167, Los Angeles, California 90012, and uses the email address newvivekshah@gmail.com. Mr. Shah is a tester for CIPA claims, intentionally visiting websites to have his personal and other information collected and then sending hundreds or possibly thousands of demand letters as a pro se litigant alleging CIPA violations.

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  ·  Fax 415.989.1663

## JURISDICTION AND VENUE

6.      This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual controversy of sufficient immediacy and concreteness exists between Lofty and Mr. Shah with respect to Mr. Shah's rights and Lofty's obligations under CIPA.

7.      This is a matter of considerable import to website operators in California (and across the United States) who are being subjected to a flood of demand letters and lawsuits accusing them of unlawful conduct (specifically, violation of CIPA) by virtue of their use of commonplace website analytics tools.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because, upon information and belief, Lofty and Mr. Shah are citizens of different states.

9.      The amount in controversy requirement is easily satisfied. Mr. Shah's Demand Letter and his subsequent written reply confirm that his damages theory yields $10,000 in statutory damages for his single alleged visit to the lofty.com platform—two qualifying violations at $5,000 each under Cal. Penal Code § 637.2(a)(1).  But the amount in controversy is not measured by what Mr. Shah demands; it is measured by the value of the object of the litigation to Lofty. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). The object of this litigation is not a single URL.  Lofty is a technology platform that powers the real estate businesses of more than 91,000 agents and brokerages across the United States, and over 30,000 websites.  Each deployment on Lofty's platform runs on the same infrastructure and uses standard, widely deployed web analytics tools like Google Analytics 4, the very tool Mr. Shah contends is an unlawful pen register.  A declaration that the platform's configuration is lawful protects all 30,000 deployments simultaneously; a declaration to the contrary requires infrastructure-level remediation.  The Threatened Complaint demands that Lofty disable all third-

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

party scripts and pixels, which would have significant and immediate negative impact on Lofty's business, client acquisition, and client retention. Moreover, if there is a determination that the subject analytics tools constitute illegal pen registers under CIPA, Lofty will be required to undertake significant re-architecture of its platform, potentially including all 30,000 deployments on its platform, to comply with that ruling. Such re-architecture would require months of staff resources, procurement of new technology, and implementation cost across a platform serving 91,000 active customers and over 30,000 deployments—costing far in excess of $75,000. Lofty's potential exposure to those customers, each of whom contracted for the current platform configuration, provides an additional and independent basis. The value of the declaratory judgment Lofty seeks exceeds the jurisdictional threshold by orders of magnitude.

10. This Court has personal jurisdiction over Mr. Shah because Mr. Shah is, upon information and belief, a natural person who resides in Los Angeles County, California.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Mr. Shah resides in this District, and because, upon information and belief, and pursuant to the Threatened Complaint, the alleged events giving rise to this action occurred in this District. Indeed, Mr. Shah has designated Los Angeles Superior Court as his intended forum in the Threatened Complaint.

**A STRONG PUBLIC INTEREST SUPPORTS THE COURT EXERCISING DISCRETION TO ADJUDICATE THIS CONTROVERSY**

12. The Court should exercise its discretion to adjudicate this declaratory judgment action because doing so will provide clarity and allow website operators, like Lofty, in California—and across the United States—to understand their obligations under CIPA. The declaration Lofty seeks will afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding. By adjudicating this matter now, the Court can prevent a multiplicity of individual suits

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

against Lofty's 91,000 customers who utilize the same platform configuration, thereby promoting judicial economy and providing essential operational certainty to hundreds of thousands, if not millions, of website operators.  The controversy is immediate, concrete, and ripe for resolution.

13.    Mr. Shah himself has filed numerous CIPA cases in California courts, contributing to the thousands of similar actions filed against companies that use website analytics tools.  This volume of litigation is contrary to the statute's fundamental purpose, and elevates the central question posed herein to one of considerable public importance.

14.    Additionally, since February 2025, the California Legislature has been considering legislation to stem the growing tide of CIPA litigation.[1]  The latest proposal would prohibit individuals from bringing CIPA pen register claims for conduct occurring on a website or mobile application, leaving the California Attorney General as the sole enforcing party.[2]  Rather than take guidance from this proposed legislation and withdraw or cease bringing pen register claims based on website data collection, it appears that plaintiffs like Mr. Shah have responded in recent months to the draft legislation by aggressively *increasing* the volume of threatened claims under the statute.  Judgment against Mr. Shah that Lofty's analytics do not violate the pen register statute would protect Lofty and its platform, and would further the legislative intent of the proposed CIPA Amendment.

**FACTS**

**A.    The Lofty Platform**

15.    Lofty is a real estate technology company whose platform enables real estate agents and brokerages to manage client relationships, operate professional

---

[1] There is also a growing movement among the California business community to support the CIPA amendments.  *See* www.reformcipa.com.

[2] https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id= 202520260SB690.

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  ·  Fax 415.989.1663

websites, and automate marketing communications. The Lofty platform currently deploys the websites of more than 91,000 real estate professionals across the United States.

16. Lofty employs common analytics tools on its platform, including Google Analytics 4.

**B.   Mr. Shah's Demand Letter And Litigation Campaign**

17. Defendant Vivek Shah is a serial pro se litigant who has been sending mass, templated demand letters to businesses across the United States alleging that the use of standard analytics tools constitutes a violation of CIPA's pen register provisions, Cal. Penal Code § 638.51. Mr. Shah has filed numerous lawsuits asserting these same claims against a wide variety of defendants across multiple industries.

18. On June 13, 2026, Mr. Shah sent Lofty a demand letter (the "Demand Letter"), accusing Lofty of violating CIPA, specifically Cal. Penal Code § 638.51(a), claiming that Lofty "installed and used multiple pen registers … without consent." In the Demand Letter, Mr. Shah asserted that he was "[s]eeking injunctive relief, declaratory relief and statutory damages" as a result of the claimed CIPA violation, and attached a draft complaint that was "prepared and ready to be filed with the Los Angeles Superior Court should this matter remain unresolved." A true and accurate copy of the Demand Letter enclosing the Threatened Complaint is attached hereto as Exhibit 1.

19. In the Threatened Complaint, Mr. Shah alleges that, while located in Los Angeles County, he was injured when Lofty purportedly "installed and/or used pen register processes . . . without a court order and without [Mr. Shah's] informed and specific consent." *See* Ex. 1 at Threatened Compl. at ¶¶ 14 and 16. Mr. Shah seeks statutory damages under Cal. Penal Code § 637.2(a)(1) of $5,000 per violation, plus broad equitable relief, including orders requiring Lofty to disable all third-party scripts and re-architect its platform.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

6

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

20.     California Penal Code § 637.2(a)(1) provides that, "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation" and recover, at minimum, "five thousand dollars ($5,000) per violation."  However, courts have held that simply providing routing information like an IP address to another party is not an "injury" under the pen register provisions of CIPA.  *See, e.g.*, *Rodriguez v. IMDB.com, Inc.*, 2026 WL 886927, at *3-4 (Cal. Super. Ct. L.A. Cnty. Mar. 24, 2026) (sustaining demurrer for CIPA § 638.51 claim).

21.     In the Threatened Complaint's prayer for relief, Mr. Shah also contends that he is entitled to a permanent injunction requiring Lofty to "immediately cease and permanently refrain from installing, deploying, or using pen register processes on Website visitors' devices without a court order and without informed, specific, and prior consent," which an injunction, if granted, would necessitate, *inter alia*, Lofty re-architecting its platform to implement several material corrective measures. *See* Ex. 1 at Threatened Compl. at Prayer for Relief.

22.     By letter dated June 25, 2026, Lofty responded to the Demand Letter (the "Lofty Response"), denying that the use of pen registers within its platform violates any provision of CIPA because, at a minimum, CIPA's pen register provisions do not apply to website analytics.  Moreover, the tools identified by Mr. Shah in the Threatened Complaint do not constitute pen registers because they do not tap telephone lines or intercept dialed phone numbers.  Lofty further asserted that Mr. Shah's asserted CIPA violations by Lofty in the Demand Letter and Threatened Complaint contradict the California Consumer Privacy Act ("CCPA"), which expressly contemplates that businesses may collect and use data through ordinary website operations, provided that such businesses give appropriate notice and respect consumer rights, including the right to opt out of certain website tracking technologies (which Lofty does).  A true and accurate copy of the Lofty Response is attached hereto as Exhibit 2.

7

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

23.    By email dated June 25, 2026, Mr. Shah responded to the Lofty Response (the "Shah Reply"), expressly rejecting the arguments raised in the Lofty Response and continuing to assert that he is entitled to statutory damages under CIPA.  Specifically, Mr. Shah contends that Exhibit A to the Threatened Complaint—a purported network capture of communications that took place when Mr. Shah accessed the website—constitutes two separate violations of CIPA, which, at $5,000 per violation, entitles him to $10,000 in statutory damages.  A true and accurate copy of the Shah Reply is attached hereto as Exhibit 3.

24.    Mr. Shah has not withdrawn his Demand Letter, has not indicated any intention to abandon his threatened litigation, and has on numerous prior occasions followed through on similar demands, filing numerous CIPA complaints in state and federal court.  A real, immediate, and justiciable controversy exists between the parties.

**C.    Mr. Shah Was Not Injured by Lofty's Use of Analytics Technology And The Private Attorney General Doctrine Does Not Save His Threatened Claim**

25.    To bring a CIPA pen register claim, Mr. Shah must plead, and ultimately prove, *inter alia*, that he has standing to bring his claim.  Standing, for purposes of CIPA, means that Mr. Shah was "injured" by Lofty's alleged use of a pen register or trap and trace device on its platform.  This means that Mr. Shah must show that Lofty transmitted information about which he had a reasonable expectation of privacy and/or that Lofty unjustly enriched itself by sharing that information.  Crucially, "[s]ection 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them." *Casillas v. BOP LLC*, 2025 WL 2161288, at *2 (Cal. Super. Ct. L.A. Cnty. June 18, 2025).

26.    The only allegations in the Threatened Complaint about Mr. Shah's supposed injury are that his IP address and device information were transmitted to third-party service providers, which is not an injury under CIPA section 638.51.

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

*See, e.g.*, *Rodriguez*, 2026 WL 886927, at *3-4. Courts have confirmed that internet users do not have a reasonable expectation of privacy over their IP addresses or device information. And Mr. Shah, by way of the Threatened Complaint, does not contend that any other information was transmitted, nor that Lofty enriched itself from the purported sharing of his IP address and device information with a third party.

27. To the extent Mr. Shah may contend that California's private attorney general doctrine—or the deterrence rationale underlying CIPA's $5,000-per-violation statutory damages provision—eliminates the threshold requirement of a concrete, particularized injury, that contention is incorrect as a matter of constitutional and statutory law. The Legislature's choice to provide statutory damages does not confer standing on a plaintiff who lacks a cognizable injury; it defines the measure of recovery for a plaintiff who has already established one.

28. The private attorney general doctrine, properly understood, operates as a fee-shifting mechanism after standing and liability have been established—not as an independent basis for initiating suit.

29. The private attorney general doctrine is a fee-shifting mechanism, not a standing doctrine. California Code of Civil Procedure § 1021.5 authorizes attorney's fee awards to plaintiffs who vindicate important public rights, but it does not create a cause of action, expand the class of persons who may sue, or eliminate the constitutional requirement of a concrete injury. A plaintiff must first establish statutory standing and a valid cause of action before § 1021.5 becomes relevant. The doctrine was designed for cases where the plaintiff's primary recovery is injunctive or declaratory relief that benefits the public at large. It does not transform a statutory damages claim—even one brought under a statute with genuine public policy underpinnings—into an action that satisfies the statutory standing requirement without independent proof of a concrete, particularized harm.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

30. CIPA's pen register provision requires a plaintiff who has suffered a genuine, subjective invasion of an objectively reasonable privacy interest. The reasonable expectation of privacy inquiry is an objective standard: the question is not whether the plaintiff preferred not to be tracked, but whether a reasonable person in the plaintiff's actual circumstances would have harbored such an expectation. A plaintiff who visits a website not as a genuine consumer seeking its services, but as a litigation investigator specifically to document, record, and preserve evidence of an alleged tracking event, cannot satisfy this standard. The circumstance of the visit forecloses the expectation. Where the plaintiff engineered the contact for litigation purposes, there is no violated expectation and therefore no cognizable injury under CIPA's pen register provisions.

31. By voluntarily and knowingly visiting websites to have his personal information collected and then sending hundreds or thousands of letters alleging identical privacy violations, Mr. Shah is a tester who actively seeks out privacy violations rather than a genuine consumer. As such, he could not have had a reasonable expectation of privacy when he visited Lofty's platform.

## THE LEGAL LANDSCAPE

32. The central question being posed to this Court—whether certain commonplace website analytics tools can constitute use of a pen register in violation of CIPA—has not been answered on the merits.

33. The California Supreme Court and California Courts of Appeal have not yet resolved whether the website analytics tools at issue are pen registers within the meaning of CIPA, Cal. Penal Code § 638.51(a).

34. Although California Superior Court decisions are not binding precedent, they constitute persuasive authority on questions of California law, and several have sustained demurrers and dismissed allegations that standard web analytics tools constitute "pen registers" under CIPA. These decisions are

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

particularly instructive here because Mr. Shah designated Los Angeles Superior Court as his intended forum in the draft complaint attached to his demand letter.

35.    In *Sanchez v. Cars.com, Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. L.A. Cnty. Jan. 27, 2025), the court sustained a demurrer without leave to amend, analyzing the plain language and legislative intent of the statute to conclude that the terms "refer[] to devices or processes that are used to record or decode . . . information from telephone numbers, not internet communications such as websites."

36.    In *Aviles v. LiveRamp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *3 (Cal. Super. Ct. L.A. Cnty. Jan. 28, 2025), the court rejected the claim that tracking IP addresses via a web beacon constituted an illegal pen register, explaining that such data collection is perfectly normal for websites and that the plaintiff "has not alleged anything above and beyond how the internet normally works."

37.    In *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024), the court dismissed a plaintiff's attempt to apply CIPA to website analytics, reasoning that applying the statute to track IP addresses would disrupt legitimate online commerce and extend the law beyond its intended scope.

38.    In *Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350, 2025 WL 4034985, at *3, 5 (Cal. Super. Ct. L.A. Cnty. Dec. 10, 2025), the court dismissed CIPA pen register and trap-and-trace claims without leave to amend.  The court found the statute's language ambiguous as applied to modern web technologies and, in resolving that ambiguity, examined California's broader privacy framework.  The court concluded that CIPA's pen register provisions targeted telephonic-style surveillance, not the normal operation of commercial websites, and that construing those provisions to criminalize standard analytics tools would effectively punish CCPA compliance.

39.    Most recently, in *Blaker v. NetScout Systems, Inc.*, No. 25STCV31283,

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

11

Case No. _____

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

2026 WL 1709143, at *4 (Cal. Super. Ct. L.A. Cnty. May 27, 2026), the Los Angeles Superior Court dismissed a CIPA class action with prejudice, finding that the statute's broader terms such as "addressing" must be read alongside telephony-focused terms like "originating number" and "dialing," and that the provisions apply to telephone communications only, not ordinary software on a commercial website. The court sustained the demurrer without leave to amend, finding the defect to be structural and statutory rather than a pleading problem capable of being cured.

40.    Importantly, California courts have also recognized that applying CIPA's criminal pen register provisions to standard website analytics tools would create substantial tension with the CCPA, which expressly regulates and in many respects authorizes the collection of consumer data through ordinary commercial website operations.  The California legislature did not intend to criminalize under CIPA the very data collection practices it carefully regulated under the CCPA.

41.    To be sure, several federal district courts have, at the pleading stage, declined to dismiss CIPA pen register claims arising from the use of website analytics tools, reasoning that the statute's text—which refers to "a wire or electronic communication" rather than a telephone communication—is not limited to telephonic surveillance.  *See, e.g., Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929–33 (N.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871–72 (N.D. Cal. 2025).  However, these decisions—premised on an obligation to presume the truth of the allegations—do not control the outcome here.

42.    Declaratory relief is therefore needed to resolve this controversy and clarify the central question in dispute:  whether § 638.51(a) applies to widely used website analytics tools.

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## FIRST CAUSE OF ACTION

### Declaratory Judgment — No Violation of CIPA

### (28 U.S.C. § 2201; Cal. Penal Code §§ 638.50–638.55)

43.     Lofty incorporates by reference all preceding paragraphs as though fully set forth herein.

44.     An actual controversy of sufficient immediacy and concreteness exists between Lofty and Mr. Shah.  Mr. Shah has alleged in his Demand Letter that Lofty's website violates CIPA's pen register provisions.  He has threatened to file suit.  Lofty disputes these allegations in their entirety and contends that its website does not violate CIPA or any other applicable law, and that Mr. Shah lacks standing to assert his claims.  This controversy is ripe for adjudication.

45.     Lofty has a reasonable apprehension of imminent litigation as a result of Mr. Shah's communications and his explicit threat to file the Threatened Complaint.

46.     Lofty is entitled to a declaration that its use of certain website analytics tools on the Website does not constitute the installation or use of a "pen register" or "trap and trace device" within the meaning of Cal. Penal Code §§ 638.50–638.55.

47.     This Court need not await the filing of a complaint to declare that Mr. Shah lacks standing to bring one.  The Declaratory Judgment Act was designed precisely for this purpose:  to allow a threatened party to obtain a present adjudication of rights rather than waiting in legal uncertainty for a lawsuit to materialize.  Mr. Shah's two written demands establish the requisite actual controversy.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (actual controversy exists where "the dispute [is] 'definite and concrete, touching the legal relations of parties having adverse legal interests'").

48.     Accordingly, and independently of the merits arguments set forth above, Lofty is entitled to a declaration that Mr. Shah lacks statutory standing to assert his threatened CIPA claims because he had no reasonable expectation of

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

privacy over his IP address and device identifiers, and therefore he has not suffered an injury under CIPA.

49.    Mr. Shah visited the lofty.com platform not as a genuine user seeking real estate services, but as a litigation tester specifically seeking to document tracking events for the purpose of a pre-drafted demand letter.  As held in *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025), a tester who actively seeks out privacy violations cannot claim injury when her expectations were met—there was no objective, reasonable expectation of privacy to violate.

50.    Mr. Shah's conduct is more egregious still.  The evidence indicates that Mr. Shah's "visit" to the lofty.com platform was not the act of a natural person browsing a website, but was carried out using automated software specifically designed to detect and document analytics transmissions—a programmatic simulation of a user visit, directed at a website Mr. Shah had already pre-selected as a litigation target.  Under the civil analog to the "fruit of the poisonous tree" doctrine, a plaintiff who deploys his own surveillance apparatus to manufacture the predicate of a legal claim cannot characterize the resulting "injury" as fairly traceable to the defendant.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (standing requires an injury fairly traceable to the challenged conduct of the defendant); *Rodriguez*, 2026 WL 886927, at *3-4.  Where Mr. Shah engineered the visit, controlled the data capture, and manufactured the evidentiary record upon which he now seeks to ground his demand, any alleged injury traces to Mr. Shah's own apparatus—not to anything Lofty did.

51.    Furthermore, a plaintiff who visits a website specifically to document and record a claimed tracking event—rather than to use its services as a genuine consumer—cannot credibly assert a subjective or objective expectation of privacy with respect to that visit.  The private attorney general doctrine does not cure these deficiencies; it is a fee-shifting mechanism, not a standing doctrine, and does not eliminate the statutory standing requirement.

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PRAYER FOR RELIEF**

**WHEREFORE**, Lofty respectfully prays that the Court:

(1)    Declare that any use by Lofty of Google Analytics 4 and HubSpot on the Lofty platform does not violate Cal. Penal Code § 638.51(a);

(2)    Declare that Defendant Vivek Shah lacks statutory standing to assert claims against Lofty under CIPA based on his alleged visit to the lofty.com platform, because he visited the platform as a litigation investigator rather than as a genuine user, and therefore had no objective, reasonable expectation of privacy, as required for a cognizable CIPA injury;

(3)    Award Lofty its reasonable attorneys' fees and costs, as permitted by applicable law; and

(4)    Grant such other and/or further relief as the Court deems just, appropriate, and equitable.

**DEMAND FOR JURY TRIAL**

Lofty demands a trial by jury on each and every claim and defense so triable.

DATED:  July 8, 2026                    COBLENTZ PATCH DUFFY & BASS LLP


By: _____
SCOTT C. HALL
PHILLIP J. WIESE
LEEZA ARBATMAN

Attorneys for Plaintiff
Lofty Inc.

15

Case No. _____

COMPLAINT FOR DECLARATORY JUDGMENT